IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEREK HINDS,                          :
    Plaintiff,                    :
                               :
                               :
vs.                                   :          CIVIL ACTION 18-0481-KD-MU
                               :
C.O. WETZEL, et. al.,                 :
    Defendants.                   :
                               :

## **REPORT AND RECOMMENDATION**

Plaintiff Derek Hinds, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983.  This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R).  After careful review, it is recommended that Defendants' Motion for Summary Judgment be **DENIED** as to Plaintiff's Eighth Amendment claims related to the nighttime attack and **GRANTED** as to Plaintiff's Fourteenth Amendment claim and Eighth Amendment claim related to the T.V. room inmate assault.

## I.    Procedural and Factual Background.

Plaintiff Derek Hinds brings this suit against Lieutenant Nieves, Lieutenant Brown, and Correctional Officer Wetzel for failing to protect him from and intervene in an inmate-on-inmate attack while incarcerated at Holman Correctional Facility.

On April 11, 2018,[1] at approximately 3:00 p.m., Plaintiff claims that he was in the TV room with about 20 other inmates who were "arguing".  (Doc. 1 at 4).  The "fussing"

_____

[1]    Plaintiff claims on or about April 12, 2018 that the incidents of this complaint occurred.  (Doc. 1 at 4).  The prison incident reports submitted by the Defendants,

led to a "physical altercation" between Plaintiff and an unnamed inmate. (*Id.*).  Three officers, including Officer Wetzel, "stood and watched" the inmates fight from the window gate and did not act to break up the fight. (*Id.*).  Rather, Officer Wetzel commented, it was "good action" and inmates "broke up" the fight. (*Id.*).  Plaintiff claims he asked that Lt. Nieves or Lt. Brown be called, and when the supervisors were called by radio, Plaintiff heard Lt. Nieves instruct the officers to leave the gate closed unless the inmates were dying.[2]  According to Plaintiff, "things settle[d] back down" and he went and showered and cleaned his living area, which was positioned directly in front of the officers. (*Id.*).  While at his bed, however, Plaintiff alleges "the guy kept walking by threatening me", so he asked the officers if they would move him or the other inmate "before it became a problem." (*Id.*; Doc. 44-1 at 1).  Plaintiff claims the officers said, "Lt. Brown said shut up go to bed." (Doc. 1 at 4).  Thereafter, Plaintiff was awakened from his sleep by something burning on his neck and chest.  Plaintiff jumped up and yelled for help, but "the C.O.'s just looked at [him]." (*Id.* at 5).  Plaintiff and "the guy" began to fight, as Plaintiff yelled for help and for the gate to be opened.  The fight was again broken up by inmates, and Plaintiff claims, after approximately 25 minutes, the gate was opened enough that he pushed his body through it.  Plaintiff was escorted to the health care unit, where he was treated for burns to his face and body.

---

however, evidence that the incidents occurred on April 11, 2018.  Thus the court will refer to April 11, 2018 as the date of the complaint incident.

[2]    Plaintiff alleges, "I heard Lt. Nieves asked were we dying?  If not don't open the gate.  They aren't dead yet." (Doc. 1 at 4).

Plaintiff is suing each defendant in their individual capacities and requests a jury trial, along with monetary relief ($100,000 compensatory, $100,000 nominal, and $25,000) from each defendant.

The Defendants have answered the suit and assert that they had no knowledge that Plaintiff was in danger of an attack, because Plaintiff never identified his assailant to the Defendants as a potential danger to his personal wellbeing and safety prior to the attack.  (Docs. 21, 22, 39, 40).  The Defendants have failed to respond to or acknowledge Plaintiff's allegations regarding the fight in the TV room nor communication of a threat thereafter.   Instead, Defendants maintain that Plaintiff was attacked by an unknown assailant, who threw a hot oil and shaving powder mixture on Plaintiff while he was asleep. Officer Wetzel and Officer Wright, who were assigned to Cubicle 1 at the time of the incident, observed Plaintiff standing at the grill gate of Housing Unit C with powder on his face, arm, and chest while other inmates were shouting, "get him out of here."  (Doc. 21-2).  Officer Wright (a nonparty) called for assistance and Plaintiff was escorted to the health care unit for medical treatment for his burns.  When Lt. Brown questioned Plaintiff about what happened, Plaintiff stated, "I don't know who or why someone threw shaving powder on him when he was lying on his bed asleep."  (*Id*.).  It was later discovered through investigation that Inmate Maurice McCarty assaulted Plaintiff.

In support of their position, Defendants have submitted a Special Report containing personal affidavits, Incident and Duty Officer Reports, Body charts, and Post Assignment Rosters.   The court has converted Defendants' Answers and Special Reports into a Motion for Summary Judgment.  (Doc. 41).

Plaintiff has responded to the motion arguing that genuine issues of material facts exists as to: (1) whether or not three officers watched the altercation between Hinds and another inmate, (2) whether Lt. Brown erred in not moving one of the inmates, and (3) whether Lt. Nieves instructed officers not to enter the dorm to remove Hinds unless he was dead.  (Doc. 44).

After a thorough review of the pleadings, this motion for summary judgment is ripe for consideration.

## II.   Summary Judgment Standard.

Summary Judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)[3]; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'"(emphasis omitted)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[3]    Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts.  The standard for granting summary judgment[, however,] remains unchanged. . . . The amendments [have] not affect[ed] continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note on 2010 amendments.

the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  <u>Id</u>. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  <u>Id</u>. at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.  <u>See</u> <u>Anderson</u>, 477 U.S. at 255.

<u>ThyssenKrupp Steel USA, LLC v. United Forming, Inc</u>., 926 F. Supp. 2d 1286, 1289-90 (S.D. Ala. Jan. 29, 2013) (citations omitted).

The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts.  A genuine dispute requires more than "some metaphysical doubt as to material facts." <u>Garczynski</u>, 573 F.3d at 1165 (internal citations omitted).  A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. <u>Id</u>.  In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." <u>Resolution Trust Corp. v. Dunmar Corp</u>., 43 F.3d 587, 599 (11th Cir. 1995).  More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>,

550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007); see also Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. Aug. 29, 2011) ("In cases where opposing parties tell different versions of the same events one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations." (citations omitted) (unpublished)).[4]

### III.   Discussion.

#### A. Eighth Amendment Claims.

Under the Eighth Amendment, prison officials have a duty to "ensure reasonable safety" of inmates, "a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-845.  However, "a prison custodian is not the guarantor of a prisoner's safety", *Purcell ex rel. Morgan v. Toombs Cnty.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (citation omitted), and "[i]t is not[] every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834.  Prison officials must "take reasonable measures to guarantee the safety of the inmates," *Hudson v. Palmer*, 468 U.S. 517, 526-27, 104 S. Ct. 3194, 3200, 82 L. Ed. 2d 393 (1984), but there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not. . . ." *Farmer*, 511 U.S. at 838.  It is a defendant's deliberate indifference to a known, significant risk that violates the Eighth Amendment.  *Lane v. Philbin*, 835 F. 3d 1302 (11th Cir. 2016).

---

[4]      "Unpublished opinions are not considered binding precedent, but may be cited as persuasive authority."  11th Cir. R. 36-2.

To establish a § 1983 claim for deliberate indifference to his safety a plaintiff must show "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Id.* at 1307.  The first, objective, element requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." *Id.*  The second, subjective, element requires showing that the official was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . also draw the inference." *Farmer*, 511 U.S. at 837.  Again, it is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed 2d 251 (1986).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.* The third element, causation, requires a plaintiff to demonstrate a link between a defendant's act or omission and the excessive risk of harm, and a link between the risk of harm and the plaintiff's injury. *LaMarca v. Turner,* 995 F.2d 1526, 1538-39 (11th Cir. 1993).

### 1.  Failure to Intervene in TV Room Altercation.

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence." *Terry v.*

*Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (per curiam) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).  In order for liability to attach, however, "the officers must have been in a position to intervene." *Id*. In other words, "[a]n officer who fails to intervene in a fight between inmates can only be held liable if he 'was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff.'" *Seals v. Marcus*, 2013 U.S. Dist. LEXIS 25299, at *19, 2013 WL 656873, at *7 (M.D. Ga. Jan. 25, 2013), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 24128, 2013 WL 663579 (M.D. Ga. Feb. 22, 2013).  The inmate plaintiff bears the burden of demonstrating that the correctional officer defendant "was in a position to intervene but failed to do so." *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (per curiam) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)).

Here, Plaintiff's failure to intervene claim is insufficient to establish a constitutional violation.  First, it is arguable whether the inmate fight created a substantial risk of serious harm to Plaintiff, as Plaintiff fails to allege any injury from the fight, no medical attention was necessary, and Plaintiff maintains that he was able to continue about his normal routine following the fight.  Second, Plaintiff fails to carry his burden of showing that Defendant Wetzel was in a position to intervene, as he fails to allege or describe the proximity of Defendant Wetzel to the fight or provide any facts suggesting the duration of the fight.  Last, because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation, *Carey v. Piphus*, 435 U.S. 247, 253-55, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978), and Plaintiff has failed to allege *any* injury at all related to the fight in the T.V. room.

"[T]aking the facts in the best light to the nonmoving party and drawing all reasonable inferences in that party's favor," the undersigned finds that Plaintiff's allegations are too vague and fall vastly short of establishing a constitutional violation for failure to intervene.   Accordingly, the undersigned recommends that Defendants be **GRANTED** summary judgment on this claim.

### 2.  Failure to Protect from Subsequent Nighttime Attack.

The Court starts with the general rule that vague allegations that an attack might occur by an inmate, or upon an inmate, are insufficient to impute knowledge to an officer supervising an entire dormitory, as "[t]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Daniels v. Baldwin Cnty. Corrs. Ctr.*, 09-0726-KD-B, 2011 U.S. Dist. LEXIS 80991, *27 (S.D. Ala. June 23, 2011) (*citing Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996). Precedent also holds that Eighth Amendment liability may be avoided by showing: "(1) 'that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;' (2) 'that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;' or (3) that 'they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Rodriguez v. Sec'y Dept. of Corrs.*, 508 F.3d 611, 617-18 (11th Cir. 2007) (citation omitted).  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Hale*, 50 F.3d at 1583 (quoting *Farmer*, 511 U.S. at 842).  "Thus, 'a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Id.*  Shedding further light

on when threats between inmates impute knowledge of a serious risk of harm to defendant officers, the Eleventh Circuit has recently explained:

> Successful deliberate-indifference claims will generally require some further reason — beyond the plaintiff having informed the defendant officers of the threat — that a prison official could have concluded that a particular threat evidenced a substantial threat, rather than the mere possibility, of serious harm.

*Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019).[5]  That is, Plaintiff must show that he "gave prison officials further information enabling them to conclude that the risk was substantial and not merely possible."  *Id.*; *see also Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) ("Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.' *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).'").

Here, the record reflects that Defendant Wetzel knew of the previous physical altercation in the TV room; Defendant Wetzel was positioned in front of Plaintiff's living area and observed the assailant continually walking by him; Defendant Wetzel was also informed by Plaintiff that Plaintiff was being threatened by the inmate assailant.  Notably, the record is silent as to Defendant Wetzel's and Defendant Brown's version of the facts, as they have failed to respond to this allegation.[6]  Considering the evidence in its totality,

---

[5]     In *Marbury*, a per curium decision, the Eleventh Circuit analyzed "whether a reasonable jury could find Marbury's statement that he had heard from a friend that an unnamed prisoner intended to hurt him, and that he was afraid of being hurt or killed, without any further details, sufficient to make the defendants aware of a substantial risk of serious harm."  *Marbury*, 936 F.3d at 1236.

[6]     Defendant Lt. Brown affirms, based on the unsworn Incident Report, that Plaintiff reported to Lt. Brown that he did not know who assaulted him or why.  (Doc. 21-1).  The law, however, is clear, a prison official cannot avoid liability "by showing that . . . he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. . . ", *Farmer*, 511 U.S. at 843,

a reasonable jury could conclude that Plaintiff was at a substantial risk of serious harm and that Defendants Wetzel and Lt. Brown did not respond reasonably to the risk by investigating the issue or by moving Plaintiff.  Thus, at this early stage of the case, it appears Plaintiff has carried his burden of showing a genuine issue of material fact exists as to whether or not Defendants acted with deliberate indifference to his request to move dorms, and summary judgment should be **DENIED** at this time.

### 3.  Failure to Intervene in Nighttime Attack.

Plaintiff claims that when he was attacked on the evening of April 11, 2018, he jumped up and yelled for help, but the officers just looked at him.  He claims he and "the guy" began to fight as the three officers stood at the gate.  He further claims he yelled for help for 25 minutes before being let out of the gate.  Plaintiff has thus plead an objectively substantially serious risk of harm.  The questions thus remain whether or not Defendant Wetzel was subjectively aware of the risk, in a position to intervene, and/or whether or not he responded reasonably to the risk of injury. *See Johnson,* 568 F. App'x at 724-25.

According to Defendant Wetzel, he was assigned to Cube #1 and was not standing at the gate as alleged by Plaintiff.  Defendant Wetzel further maintains that, in this Cube, he is unable to speak to inmates outside the Cube and would not have heard Plaintiff ask officers to open the gate.  Defendant Wetzel asserts that at 10:15 p.m., he saw Plaintiff standing at the grill gate with powder on his face, arm, and chest area and escorted him to the health care unit.  (Doc. 39-1 at 1-2).

The record evidence, based on unsworn prison documents, reveals that Officer Wetzel was assigned to Cubicle #1 at the time of the incident, after he relieved Officer Wright (a non-party) from the post at approximately 10:05 p.m. (when Officer Wright

exited the facility).  (Doc. 21-2 at 8, 9, 11).  This is contradicted by the Incident Report, however, which reflects that at 10:15 p.m., Officers Wetzel and Officer Wright observed Plaintiff standing at the grill gate of C-Dorm and Officer Wright radioed for assistance, to which Officer Mitchell (a non-party) responded.  (Doc. 21-2 at 2).  Additionally, in opposition to Defendant Wetzel's affirmation that he could not hear Plaintiff's yells for help, the unsworn Duty Officer Report indicates that Officer Wetzel "heard inmates from Housing Unit 'C' shout repeatedly, 'get him out of hear.'"  (Doc. 21-2 at 3).

At this stage of the action, it is not the function of the reviewing court to weigh the evidence and determine the truth of the matter; rather, it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 252; *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986) ("[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied.")); *Kingsland v. City of Miami*, 382 F.3d 1220, 1227 (11th Cir. 2004), *cert. denied, De Armas v. Kingsland*, 543 U.S. 919, 125 S. Ct. 80, 160 L. Ed. 2d 203 ("The plaintiff's word is merely countered by the defendants' testimony. Given the standard of review at the summary judgment state, we must accept [Plaintiff's] version of the facts as true.) (citing *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1279 n.9 (11th Cir. 2002)).  Currently, the record before the court consists of Plaintiff's allegations of deliberate indifference to his safety and Defendant's total denial of the same. Thus, there remain genuine issues of material facts and credibility determinations as to whether or not Defendant Wetzel is liable for failing to intervene in the nighttime attack. Accordingly, the parties have presented evidence of a factual dispute that may only be

determined by a trier of fact, and it is recommended that summary judgment be **DENIED** at this time.

### B.  Fourteenth Amendment Claim.

Plaintiff makes the conclusory allegation that Defendants are liable for violation of his right to Equal Protection pursuant to the Fourteenth Amendment.  (Doc. 1 at 7). However, Plaintiff's complaint is insufficient, to say the least, in pleading such claim, and the claim is due to be dismissed in its entirety.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). "[T]o state an equal protection claim, a prisoner must demonstrate that (1) 'he is similarly situated with other prisoners who received' more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001) (quoting *Damiano v. Florida Parole & Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)). Other constitutionally protected interests include religion, national origin, or poverty. *Damiano*, 785 F.2d at 933.  Plaintiff's allegations fall drastically short of this standard.  Indeed, Plaintiff's complaint is devoid of any facts related to the treatment of other prisoners or a single allegation that he was treated differently based on a constitutionally protected interested.  Accordingly, it is recommended that Defendants be **GRANTED** summary judgment as to this claim, and the claim **DISMISSED**.

## IV.    Conclusion.

Based upon the foregoing, Plaintiff has carried his burden to overcome summary judgment.   Accordingly, it is recommended that Defendant's Motion for Summary Judgment be **DENIED** as to Plaintiff's Eighth Amendment claims against Defendants Wetzel and Brown for failure to protect/intervene in the nighttime attack, and **GRANTED** as to Plaintiff's Fourteenth Amendment claim and Eighth Amendment failure to intervene in the T.V. room assault against all Defendants.

The instructions below contain important information regarding objections to the report and recommendation of the Magistrate Judge.

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the

disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **ORDERED** this **21st day of October, 2020**


                    **<u>s/P. Bradley Murray</u>**
                    **UNITED STATES MAGISTRATE JUDGE**